**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**RONALD HUSBAND**                                                                                      **PETITIONER**

**VS.**                                                                                               **NO. 1:10cv466-HSO-JMR**

**JOHNNY DENMARK**                                                                                      **RESPONDENT**

## REPORT & RECOMMENDATIONS

This matter comes before the Court on Petitioner Ronald Husband's Petition [1] for Writ of Habeas Corpus and accompanying Memorandum [2] in Support filed September 24, 2010. Respondent filed a Response [10] on January 31, 2011, to which the Petitioner filed a Reply [12] on February 25, 2011. This Court, having been advised in the premises and having considered the entire record, including the lodged state court record, the Petition [1] and Memorandum [2] in Support, the Response [10], and Reply [12], in conjunction with all relevant law, recommends that the Petition [1] for Writ of Habeas Corpus should be denied.

**I.**

On November, 27, 2005, Francis Arnold checked her husband into the Forrest General Hospital with the help of Ronald Husband, a family friend.. That evening, the Francis Arnold and Husband left the hospital, and Arnold returned home. Shortly thereafter, Husband arrived at the Arnolds' home; this was not an uncommon event, as Husband was a good friend of the family his visits were frequent. However, during this visit, the events that unfolded were anything but ordinary.

Soon, Husband and Arnold began to fight; he accused Arnold of lying about coming home and began choking and hitting her. Pleading with Husband to let her leave the room to clean her bloodied face, Arnold secretly called 911. When Husband discovered that she had called for help,

he took away the phone, threw it, and it hung up. After the hang-up, the 911 operator called the number back and the phone was answered, but the operator could only hear the sounds of a female and male arguing. Believing a disturbance was taking place at the residence, the operator dispatched two Wiggins, Mississippi police officers to the scene and remained on the line.

When the two officers arrived, they observed Arnold's bloodied condition, the blood on Husband's clothing, and ask Husband to step away from the home and leave with them. But Husband refused. Instead of complying with the officers' request, Husband resisted arrest and a fight erupted between the officers and Husband. The operator, still on the line, heard the outbreak and called for backup. As Arnold backed away from the altercation and moved toward her home, she noticed Husband standing over one officer holding a black object as the officer pleaded "okay, okay." She then she heard shots and immediately ran through her home and out a back window, but as she fled the scene, heard three more shots.

Four officers arrived to find the two first-responders dead in Arnold's front yard, each shot twice at close range. Not knowing how the officers had been killed, the police officers secured the scene and moved the officers' bodies to the street. Arnold returned home and was sent to the Wiggins Police Station, where she gave both a written and oral statement of what happened at her home, and identified Husband as the killer. The police then went to Husbands home and arrested him.

The investigation revealed that the rounds used to kill the officers were fired from one of the officers' police-issued gun. That gun was discovered by a dive team three days after Husband's arrest in a shallow ditch between his and Arnold's homes. A surveillance photograph, taken from the hospital the night Arnold checked in her husband, was discovered depicting Husband and Arnold. In it, Husband was wearing a baseball cap, sunglasses, and a gold chain, all of which

matched the baseball cap, sunglasses, and gold chain found at the scene of the crime. Additionally, a sweatshirt was taken from Husbands home, the blood found on it was tested and found to be a match for Arnold.

Husband was indicted as a habitual offender for two counts of capital murder of police officer. After a full trial, Husband was convicted on both counts and sentenced to serve two terms of life without parole. On appeal, the Mississippi Court of Appeals affirmed his conviction on November 24, 2009. *Husband v. State*, 23 So. 3d 550 (Miss. Ct. App. 2009). Husband then filed a petition for Post-Conviction Relief ("PCR") that was denied by the Mississippi Supreme Court by Order on July 21, 2010.

Husband filed the instant Petition for Writ of Habeas Corpus with an accompanying Memorandum in Support on September 24, 2010, raising the following grounds for relief:

1. Whether the trial court erred when it failed to grant defendant his motion for a new trial on the grounds that the weight of the evidence was such that the defendant should not have been convicted

2. Whether the trial court committed reversible error in failing to give the lesser-included offense of manslaughter instruction submitted by trial counsel.

3. Whether Jury Instruction S-2A and S-3A misstated the law in a manner rendering them ultimately confusing to the jury, resulting in a violation of the appellant's fundamental due process rights.

Pet'n [1].

**II.**

The authority of this Court to issue habeas corpus relief for persons in custody of the state is granted by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254 states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless that adjudication of the claim-

> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254.

As a threshold matter, this Court must first determine whether the state court adjudicated Fraise's claims on the merits, and therefore must apply the standards of 2254(d)(1-2), or on procedural or exhaustion grounds prompting an alternative analysis.

Federal courts presume that a state court adjudicated a claim on the merits when it has been presented with a claim and has denied relief absent an indication of reliance upon state procedural law. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). By the terms of § 2254, a state court need not give an opinion or statement for the reasons of its denial, nor must a state court "cite or even be aware of cases under 2254(d)." *Id.* at 784. A claim will be analyzed under the terms of § 2254(d) "whether or not the state court reveals which of the elements in a multi-part claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.* It is now established that a state court summary ruling is an "on the merits" adjudication for § 2254 purposes. *Id.* at 785.

The purpose of the AEDPA amendments to 28 U.S.C. § 2254 was to minimize the role of federal habeas courts to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693 (quoting *Williams v. Taylor*, 529 U.S. 362, 386 (2000)). In a habeas court's deferential posture, relief may only be granted under the "contrary to" clause of § 2254(d)(1) with a showing that the state court's decision was contrary to then clearly established federal law. Under the "unreasonable application" clause of § 2254(d)(1), only a showing that the state court unreasonably applied the correct federal legal principle to the

facts of the case will support relief. *Bell*, 535 U.S. at 693. Third, relief may be granted if the state court decision "was based on an unreasonable determination of facts in light of the record before the state court."§ 2254(d)(2). These are a difficult standards for a petitioner to meet; section 2254 is understood to "guard against extreme malfunctions in the state criminal justice system." *Harrington*, 131 S. Ct. at 785. The Great Writ is to be issued only when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

The focus of any inquiry under the "unreasonable application" clause of § 2254(d)(1) is determining if the state court application of clearly established federal law was objectively unreasonable. *Bell*, 535 U.S. at 693. The Court has repeatedly asserted that an unreasonable application is wholly distinct from an incorrect one. "[A] federal habeas court my not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, the application must also be unreasonable." *Williams*, 529 U.S. at 408. In a § 2254(d)(1) analysis, federal courts are now limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Rabe v. Thaler*, - F.3d -, 2011 WL 3311756 *3 (Aug. 3, 2011) (recognizing the limitation of a federal habeas court to the state record as held in *Pinholster*.) As a result, "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Id.* at 1400.

The "contrary to" clause is similar to its § 2254(d)(1) counterpart in that the federal habeas court must weigh the state court decision against federal precedent. The analysis, however, is not focused on the application of federal law. Instead, federal courts must examine if the state court decision conflicts with clearly established federal law while also maintaining deference to state adjudications. Accordingly, the writ is to be issued only when "there is no possibility fair-minded

jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S. Ct. at 785.

When approaching a fact-based claim under § 2254(d)(2), a habeas court considers if the state court decision was grounded in an "unreasonable determination of facts in light of the record before the state court." § 2254(d)(2). In its analysis, a federal habeas court presumes that the underlying state court made sound factual findings. *Woods v. Quarterman*, 493 F.3d 580, 584 (5th Cir. 2007). That presumption is only rebutted, and thus an unreasonable determination proved, when the petitioner presents clear and convincing evidence of state court error. *Id.*

### III.

### A.

In Ground One, Husband claims that his conviction is contrary to the overwhelming weight of evidence and thus the trial court erred in denying his motion for new trial. In imputing the evidence against him, Husband points to the juror issues within the trial and the reliance of the state on weak circumstantial evidence. Husband argues that based upon the evidence before them, and as reflected by the jurors' apprehension of the guilty verdict, the state did not prove him guilty beyond a reasonable doubt. Faced with this circumstance, Husband claims that the trial court should have protected his right to a fair trial and thus erred in denying his motion for new trial.

Federal habeas corpus is not designed as a "'super' state supreme court."*Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)(quoting *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970)). This Court will not evaluate state court decisions on state law questions. *Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000). Inasmuch as Husband's claims call for the review of the denial of his motion for new trial, this Court cannot grant such relief. On the other hand, federal habeas corpus does provide a remedy for injury of constitutional in magnitude.

Federal habeas review of sufficiency claims finds its genesis in *In re Winthrop*. 397 U.S. 358 (1970). There, the Supreme Court declared that the Due Process Clause of the Fourteenth Amendment protects against a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id*. at 364. The Court approached *Winshop's* new evidentiary standard through federal habeas almost a decade later in *Jackson v. Virginia*, 443 U.S. 316 (1979). Before *Jackson*, habeas review of the sufficiency of evidence underlying a state conviction focused primarily on proper jury instruction: if the reasonable-doubt instruction was given, only a record devoid of evidence of an essential element would be sufficient to issue the writ. *Id*. 316, 13. In *Jackson*, the Supreme Court recognized that *Winshop's* new "fundamental . . . substantive constitutional standard . . . requires more than simply a trial ritual." *Id*. at 317. Instead, it required the finder of fact to "rationally apply that standard to the facts in evidence." *Id.* As a result, the critical question for federal habeas courts became, and is now: does the record reasonably support a finding of guilt beyond a reasonable doubt? *Id*. at 318. Tempering that inquiry with the Court's traditional reluctance to disturb the discretion of the jury and the habeas underpinnings of finality and comity, *Jackson* ruled that a reviewing court must determine if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Id.* at 319.

A federal habeas court does not re-weigh the facts to make its own determination of guilt or innocence. *Id*. at 318-19; *see Cavazos v. Smith*, 565 U.S. ___ (2011) (per curiam)(slip op., at 6). Rather, we review an insufficiency of evidence claim in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury. See *United States v. McCord,* 33 F.3d 1434, 1439 (5th Cir.1994); *See also United States v. Garcia*, 86 F.3d 394, 398

(5th Cir. 1996) (noting that juries are "free to choose among all reasonable constrictions of evidence"). Evidence must not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999). A court "faced with a record of facts that support conflicting inferences must presume-even if does not affirmatively appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."*Jackson*, 443 U.S. at 326. This analytical framework controls whether the evidence supporting conviction is direct or circumstantial. *Lage*, 183 F.3d at 382.

Though we analyze the underlying state decision according to this standard, the Court is also bound by the "highly deferential standard for evaluating state-court rulings" imposed by AEDPA. *See Lindh v. v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Cavazos v. Smith*, 565 U.S. ___ (2011) (per curiam)(slip op., at 6). As the Supreme Court has repeatedly instructed, the focus of the analysis is not whether the trial court judge should have granted the motion or if it was an abuse of discretion for him not to do so. Rather, the proper examination for this Court is whether the determination by the state appellate courts that there was no error on behalf of the trial judge was "contrary to, or an unreasonable application of" the *Jackson* standard. *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010); *Cavazos*, 565 U.S. at ___ (slip op., at 1, 8 n.*).

The Court of Appeals considered the issue at considerable length, examining Husband's claims regarding the lack of physical evidence linking him to the crime and the belief by certain jurors that guilty verdict may have erroneous. The Mississippi Court of Appeals found that with no showing that "extraneous information or outside influences prejudiced the jury's verdict," the claims based on the jurors' conduct was meritless. *Husband*, 23 So. 3d at 553-554. The court noted that there was sufficient evidence to contradict Husband's lack of evidence claim. Although no tire prints

were found at the scene matching Husband's car, his own expert acknowledged that the lack of prints could have resulted from his vehicle simply not leaving any tracks at the scene. *Id*. at 554. Francis testified that Husband was at her home before police arrived; surveillance photographs taken from the hospital depicted her and Husband together and the clothing and jewelry that Husband was wearing in the photographs were found strewn about the crime scene. *Id.* Later, DNA evidence consistent with Arnold's was taken from an unwashed sweatshirt belonging to Husband. *Id.*

The resolution of conflicting testimony is the province of the jury, and under *Jackson* a court must presume these inconsistencies were resolved in favor of the prosecution. The only issue is whether there was sufficient evidence such that any rational trier of fact could find all elements of the crime beyond reasonable doubt; it is not the directive of this Court to weigh the evidence and re-evaluate the jury's findings. Testimonial and physical evidence linked Husband to the scene of the crime. Testimonial and physical evidence presented a struggle at Arnold's home after police arrived and placed Husband over one officer, pointing an object at him with gunshots quickly following. The gun that shot both officers was later found between the scene and Husband's home.

After a complete review of the record, the evidence was sufficient for any rational trier of fact to find all elements of capital murder of a police officer beyond a reasonable doubt. Thus, "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with" the *Jackson* standard. *Harrington*, 131 S. Ct. at 785. As a result, Husband's sufficiency of evidence claim should be denied.

**B.**

In Grounds Two and Three, Husband claims jury instruction error. As a rule, federal habeas courts do not grant relief for jury instructions that are erroneous under state law. *Estelle v.*

*McGuire*, 502 U.S. 62, 71-72 (1991). Nor does the due process clause "permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 439 n.6 (1983). Rather, in keeping with the purpose of the Great Writ, a federal habeas court reviews jury instruction claims for "prejudice of constitutional magnitude." *Sullivan v. Blackburn*, 804 F. 2d 885, 887 (5th Cir. 1986). Thus, the controlling question is "whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Galvan v. Cockrell*, 293 F. 3d 760, 764-65 (5th Cir. 2002)(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In other words, a petitioner must show that the error "had a substantial and injurious effect or influence in determining the jury's verdict."*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). A federal habeas court must examine the allegedly unconstitutional omission or rendering of an instruction "in the context of the instructions as a whole and the trial record," *Estelle*, 502 U.S. at 72, through a harmless-error analysis. *Galvan*, 293 F.3d at 765. If the trial court's instruction was accurate and lawful, no federal constitutional issue is raised. *See Galvan,* 293 F.3d at 765 (holding that a substantively correct instruction "does not offend the federal constitution.")(citing *California v. Ramos*, 463 U.S. 992, 1004-05 (1983)).

In Ground Two, Husband argues that the trial court erred in not granting the lesser-included offense instruction of manslaughter. Husband argues in his petition that this instruction "would have been more reasonable for a jury to conclude" and thus should have been presented. In Mississippi manslaughter is "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel and unusual manner, or by the use of a dangerous weapon, without the authority of law, and not in necessary self-defense . . ." MISS. CODE ANN. § 97-3-35. Heat of passion is defined as "[a] violent and uncontrollable rage engendered by a blow or certain other provocation. . . .

Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time." *Agnew v. State*, 783 So. 2d 699, 703 (Miss. 2001).

Husband does not support this claim with evidence that he was provoked into a sudden emotional state of anger, rage, or terror by the actions of the officers. Rather, he agues that because the state could not meet its burden on capital murder that the lesser offense of manslaughter more accurately fit the proof. The Mississippi Court of Appeals found that Husband presented no evidence contradicting the testimony that officers attempted to take Husband in a non-aggressive manner when reaching the scene and then, when that failed, they attempted to physically restrain him. Further, the court reasoned that no nexus existed between the emotional struggle with Arnold and the shootings. "[A] defendant is entitled to instruction on a lesser included offense only 'if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater.'" *Cantu v. Collins*, 967 F.2d 1006 (5th Cir. 1992) (quoting *Beck v. Alabama*, 447 U.S. 625, 635 (1980)).

This Court agrees with the state courts that no rational jury could conclude that Husband shot either officer under the influence of sudden passion, thereby warranting an instruction of voluntary manslaughter. There was no contradictory evidence that the police officers acted in such an aggressive manner that would bring about "insult, provocation, or injury, which would produce in the minds of ordinary men 'the highest degree of exasperation.'" *Fryou v. State*, 987 So. 2d 461, 467 (Miss. Ct. App. 2008)(quoting *Graham v. State*, 582 So. 2d 1014, 1018 (Miss.1991)). After a review of the entire record, the trial court's denial of the lesser-included offense instruction did not infect the entire trial with such unfairness to render the conviction a denial of due process. This claim should be denied.

In Ground Three, Husband argues that jury instructions S-2A and S-3A misstated the law and confused the jury, resulting in a violation of his due process rights. Specifically, Husband claims that the court erroneously included the language "with deliberate design to effect the death" of the officers.

Husband was convicted on two counts of capital murder of a police officer in violation of Miss. Code Ann. § 97-3-19(2)(a) which states, in pertinent part: "[t]he killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: Murder which is perpetrated by killing a peace officer . . . while such officer . . . is acting in his official capacity . . . ." Though deliberate design is not found in the statute, Mississippi courts have recognized that the word "murder" is incorporated from the general murder statute that states, "[t]he killing of a human being without the authority of law . . . [w]hen done with deliberate design to effect the death of the person killed . . . ." MISS. CODE ANN. § 97-3-19(1)(a). The instruction's "deliberate design" phrase was consistent with state law.

As the Mississippi Court of Appeals reasoned, the instruction's surplus language only worked to increase the state's burden of proof and no prejudice resulted from its inclusion. Furthermore, Husband has not put forth any proof that the language led to confusion on behalf of the jury. Thus, the instructions did not have " a substantial and injurious effect or influence in determining the jury's verdict."*Brecht*, 507 U.S. at 637-38. Ground Three is also denied.

## RECOMMENDATION

Based on the foregoing analysis, the Petitioner has failed to meet the standards of § 2254 to warrant federal habeas corpus relief. Therefore, this Court recommends that the Petition [1] for Writ of Habeas Corpus be denied.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___23rd___ day of March, 2012.

_____s/ John M. Roper, Sr._____

CHIEF UNITED STATES MAGISTRATE JUDGE